FIRST ORIGINAL

# CAI – INTERPOOL, LLC

## LEASE PURCHASE AGREEMENT

This Lease Purchase Agreement ("Agreement" or "Lease") dated as of March 25th, 2005 is between **CAI – INTERPOOL, LLC**, a Delaware limited liability company, with offices located at 550, Kearny Street, Suite 950, San Francisco, CA 94108, USA, as "Lessor", and **GLOBAL CONTAINER LINES LIMITED**, a Delaware limited liability company whose principal place of business is at Garden City Center, 100 Quentin Roosevelt Boulevard, Garden City, NY 11530.

Lessor and Lessee acknowledge and agree that all terms and conditions of that certain Membership and Equipment Leasing Agreement dated March 25th, 2005 between Interpool Limited, as Lessor and Global Container Line, as Lessee (the "MELA") shall be and hereby are incorporated herein by reference and shall be deemed to be included as if fully set forth herein with references to the "Lessor" therein deemed to refer to CAI-Interpool, LLC, and references to "Lessee" therein deemed to refer to Global Container Line. In the event of a conflict between the terms and conditions of this Agreement and the MELA, the terms and conditions of this Agreement shall prevail.

Lessor and Lessee expressly understand and agree that upon the execution hereof, Lessor will simultaneously assign all of Lessor's right, title and interest in and to this Agreement, specifically including but not limited to all terms and conditions of the MELA incorporated by reference herein, to Interpool Limited, a Barbados corporation, and Interpool Limited will assume all of Lessor's obligations hereunder.

**Account #3507**

1. <u>QUANTITY AND TYPE:</u>

This Agreement covers the lease purchase of 400 x 20' x 8' x 8'6" and 100 x 40' x 8' x 9'6" new dry van containers, ordered to be built by Singamas (the "Manufacturer"), in accordance with Manufacturer's standard specifications including reinforced cross members.

The containers shall be supplied with Lessee's logo and serial numbers in the ranges of GCIU 205001 through GCIU 205400 and GCIU 451003 through GCIU 451102

(each a "Container" and collectively the "Containers").

2. <u>PRODUCTION AND DELIVERY TERMS:</u>

The Containers shall be produced during May 2005.

Delivery shall be effected free on truck to Lessee's designated depots in Mumbai, Dubai, and Karachi, commencing May /June 2005.



Exhibit B

# *CAI – INTERPOOL, LLC*

The Containers shall be delivered in IICL-5 condition. In the event of any damage to a Container noted by Lessee upon it's delivery such that the Container is no longer in IICL-5 condition, Lessee shall be responsible for up to the first $100 in costs to repair the Container so as to restore it back to IICL-5 condition.

The period commencing on the date the first Container is delivered through the end of the month of the date that the last Container is delivered is hereinafter referred to as the "Build-up-Period".

The period commencing on the first day of the month immediately following the month in which the Build-up-Period ends, through and including the expiration of the Rental Term (as defined below) of the last Container delivered hereunder, is hereinafter referred to as the "Locked-in-Period".

3. **DURATION OF LEASE:**

Each Container shall go on hire hereunder on the date it is delivered to Lessee. Rental Charges (as defined below) for each Container shall commence on the first calendar day of the month following the month in which the Container was delivered to Lessee, and shall continue for a period of the next five (5) years (the "Rental Term") and shall be payable in sixty (60) monthly instalments in accordance with the terms and conditions of Section 5, below.

4. **PER DIEM:**

The daily rental charges shall be:

U.S. $1.62 (one dollar and sixty-two cents) per 20' x 8' x 8'6" Container, and
U.S. $2.76 (two dollars and seventy-six cents) per 40' x 8' x 9'6" Container

(collectively, the "Rental Charges").

5. **PAYMENT TERMS:**

During the Build-up-Period the Rental Charges shall be payable against Lessor's monthly invoice 30 days from invoice date.

During the Locked-in-Period the Rental Charges shall be payable against Lessor's invoice on the first calendar day of each month in an amount equal to the Rental Charges to become due for such month (i.e. monthly in advance).

In the case of late payment, an interest charge of one and a half percent (1.5%) per month will be applied to the amount of such late payment until such payment is made. In addition, a lump sum late payment charge equal to 5% of the amount of such late payment, or the legal maximum amount, whichever is less, will be due at the time such late payment is made.

# *CAI – INTERPOOL, LLC*

6. **LOSS AND TOTAL CONSTRUCTIVE LOSS:**

If any Container shall become lost, stolen, destroyed, damaged beyond repair or rendered permanently unfit for use for any reason, or in the event of any condemnation, confiscation, theft or seizure or requisition of title to or use of any Container (a "Lost Container" and each of the foregoing events, an "Event of Loss"), Lessee shall promptly notify Lessor of such Event of Loss and promptly pay to Lessor an amount equal to the Stipulated Loss Value ("SLV") of such Container. (For purposes hereof, a Container's SLV shall be equal to the present value of the remaining Rental Charges, plus the U.S. $1.00 purchase option price due with respect to the Lost Container, measured from the date of the Event of Loss through the end of the Rental Term, calculated by Lessor using a discount rate of five percent (5%) per annum).

Notwithstanding any such Event of Loss, Lessee's obligation to pay Rental Charges and other Lease charges with respect to the Lost Container shall continue until Lessor receives payment of the SLV for such Container (as well as payment of all Rental Charges and other Lease charges then due and outstanding with respect to such Container).

It is understood and agreed that any SLV payment relates to actual Events of Loss and do not and shall not be deemed to confer upon Lessee a purchase option in the Containers or any of them.

7. **PURCHASE OPTION:**

Provided Lessee is not in default hereunder or under any other lease or other agreement with Lessor or any affiliate of Lessor and upon payment of all outstanding Rental Charges and other charges owed to Lessor, at the expiration of the Rental Term, Lessee has the option to purchase the Containers at a purchase price of U.S. $1.00 per Container.

In the event the purchase option is properly exercised, Lessor shall pass title for the Containers to the Lessee upon receipt of payment of the purchase price.

8. **ASSIGNMENT:**

Lessor (and any assignee or subsequent assignee of Lessor) has the right, without the consent of Lessee, to assign this Lease in whole or in part to any third party, including without limitation, to Lessor's lender in connection with a financing transaction relating to the Containers. Without diminishing the foregoing, Lessee shall fully cooperate with Lessor (and any assignee or subsequent assignee of Lessor) and do whatever Lessor (or any such assignee) may require of Lessee to effect any such assignment or subsequent assignment.

9. **SECURITY INTEREST:**

It is further acknowledged and agreed that this Lease is a true lease and that the relationship of the parties is that of lessor and lessee. Accordingly, the Lessor shall at all times remain the sole owner of the Containers.

Notwithstanding the foregoing, Lessee hereby grants to Lessor and Lessor hereby reserves to itself a security interest in and to the Containers as security for the full and complete payment and performance of all of Lessee's obligations hereunder. In addition to or in conjunction with, the rights and remedies available to Lessor hereunder, Lessor shall have all the rights and remedies provided to a secured party under the Uniform Commercial Code in force in the State of New York.

Lessee agrees to take whatever action and to do whatever things Lessor may reasonably request to assist Lessor in perfecting its security interest granted hereunder, including, without limitation, executing financing statements, and Lessee hereby appoints each of Lessor's officers as Lessee's lawful attorney-in-fact to do, at Lessor's option, all actions and things which the Lessor may deem necessary or desirable to effectuate its rights hereunder, including, without limitation, executing and filing financing statements in Lessee's name and on Lessee's behalf and otherwise perfecting any security interest granted hereby.

10. **CROSS-DEFAULT:**

A breach or default by Lessee of this Lease shall constitute a breach or default by Lessee of all other leases and other agreements between Lessee and Lessor or any affiliate of Lessor, and a breach or default by Lessee of any other lease or other agreement between Lessee and Lessor or any affiliate of Lessor, shall constitute a breach or default by Lessee of this Lease.

11. **FORCE MAJEURE:**

Lessor shall not be liable to Lessee or any other person for any failure or delay in the performance of any obligation due to events beyond its reasonable control, including but not limited to, fire, storm, flood, earthquake, explosion, accidents, acts of public enemy, sabotage, riots, civil disorder, strikes, lockouts, labor disputes, labor shortage, work stoppages, transportation embargoes or delays, failure or shortage of materials or of supplies or production of equipment, failure of suppliers to deliver as requested, failure of repair facilities to finish repairs, acts of God and acts or regulations or priorities of any government or its branches or agencies.

12. **DOCUMENTATION:**

This Lease Agreement may be executed in two counterparts, each of which so executed shall be deemed to be an original, and such counterparts together shall constitute but one and the same instrument.

# CAI – INTERPOOL, LLC

The parties hereto agree that to the extent this Lease constitutes "chattel paper" under the laws of the State of New York, then only that counterpart of the Lease designated as "FIRST ORIGINAL" or that is otherwise in the possession of the Lessor can transfer the Lessor's rights in the Lease. All other counterparts of this Lease shall be designated as "SECOND ORIGINAL".

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE CAUSED THIS AGREEMENT TO BE EXECUTED IN THEIR RESPECTIVE NAMES BY THEIR DULY AUTHORISED OFFICERS.

| GLOBAL CONTAINER LINES LIMITED | CAI-INTERPOOL, LLC |
|---|---|
| [signature] | Frank Sellier |
| Signature | Signature |
| KAZEM JAKSIMA | FRANK SELLIER PRESIDENT |
| Name | Name |
| PRESIDENT | |
| Title | Title |
| APRIL 12.2005 | April 26, 2005 |
| Date | Date |

CAI-INTERPOOL, LLC